IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANDRE W. WILLIAMS, SR.,      §
          Plaintiff,      §
                            §
v.                           §        No. 3:24-CV-1288-D-BW
                            §
RICHARDSON ISD,           §
          Defendant.      §        Referred to U.S. Magistrate Judge[1]

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Richardson ISD's ("RISD") motion to dismiss Plaintiff Andre W. Williams's amended complaint, (*see* Dkt. No. 28 ("Mot.")). RISD filed a supporting appendix, (*see* Dkt. No. 29 ("Def. App.")).  On March 4, 2025, Williams filed his response, (*see* Dkt. No. 36 ("Resp.")), and supporting appendix, (*see* Dkt. No. 37 ("Pl. App.")).  RISD filed its reply on March 19, 2025, (*see* Dkt. No. 38 ("Reply")).  Also before the Court is Williams's March 24, 2025, opposed motion for leave to file a second amended complaint (Dkt. No. 39), RISD's response to that motion (Dkt. No. 40), and Williams's reply (Dkt. No. 41).

For the reasons stated below, the undersigned recommends that the District Judge **GRANT** RISD's motion to dismiss, **DISMISS** Williams's claims with

---

[1] This case was referred to the United States magistrate judge for case management and for findings and recommendations on dispositive matters pursuant to Special Order 3. (*See* Dkt. No. 3.)  On August 23, 2024, it was transferred and reassigned to the undersigned magistrate judge by Special Order 3-354.  (*See* Dkt. No. 19.)

prejudice, and **DENY** Williams's motion for leave to file a second amended complaint.

## I.  BACKGROUND

**A.    Procedural background.**

Williams, proceeding pro se, filed this lawsuit in a Texas state court on April 26, 2024, alleging multiple claims of discrimination and retaliation against his former employer RISD.  (*See* Dkt. No. 1, Doc. 1-1.)  RISD removed the case based on federal question jurisdiction.  (Dkt. No. 1.)  On June 4, 2024, RISD filed a motion to dismiss the original complaint.  (*See* Dkt. No. 7.)  The undersigned filed Findings, Conclusions, and Recommendations on December 23, 2024 (*see* Dkt. No. 20 ("FCR")), recommending that the District Judge partially grant and partially deny the motion to dismiss and recommended that Williams be allowed to replead his non-time-barred claims.

Williams filed objections to the undersigned's FCR on January 6, 2024.  (Dkt. No. 21.)  He also filed an amended complaint against RISD on January 21, 2025. (*See* Dkt. No. 24 ("Am. Compl.").)  United States Senior District Judge Sidney A. Fitzwater "reviewed *de novo* the portions of the [FCR] to which objection was made, and reviewed the remaining  [FCR] for plain error.  Finding no error, the court adopt[ed] the [FCR][.]"  (Dkt. No. 25 at ECF p. 1.)  Additionally, because Williams had already filed an amended complaint, "the court [re-referred] this case to the United States Magistrate Judge for further proceedings and the completion of screening."  (*Id.*)

RISD filed the present motion to dismiss aimed at the amended complaint on February 18, 2025.

**B.    Scope of factual allegations.**

As a preliminary matter, the undersigned determines which factual allegations may be considered for purposes of this pending motion.  Williams's amended complaint includes 120 pages.  (*See* Am. Compl.)  Of those 120 pages, 47 are the amended complaint, and the remaining pages are attached exhibits.  (*See id.*) Because the exhibits are attached to the amended complaint, the undersigned may consider them.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Noticeably missing from the exhibits is Williams's Texas Workers Commission discrimination charge ("TWC Charge").  (*See* Am. Compl.)  RISD filed the TWC Charge in an appendix the same day it filed the motion to dismiss.  (*See* Def. App.)

Generally, when a court considers a motion to dismiss under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings, including attachments thereto."  *Collins*, 224 F.3d at 498.  In *Collins*, however, the Fifth Circuit explained that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim."  *Id.* at 498-99; *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (stating that courts generally must not go outside the pleadings but

may consider documents attached to the motion to dismiss that "are referred to in the plaintiff's complaint and are central to the plaintiff's claim").

Here, RISD filed the TWC Charge as an appendix in support of its motion to dismiss. Williams references the charge by alleging that "[he] timely filed employment discrimination and retaliation charges against Richardson ISD with the TWCCRD and the EEOC." (Am. Compl. at ECF p. 21.) As with the previous FCR, the undersigned finds it appropriate to consider the factual allegations in the TWC Charge. (FCR at 10-11.)

In his opposition to the motion to dismiss, Williams provides more factual allegations and additional exhibits that he did not incorporate into the amended complaint. (*See* Resp.; *see also* Pl. App.) "[B]ecause his evidence is not also attached to the complaint, the court cannot consider it in deciding [RISD's] motion to dismiss." *McGee v. Hiland Dairy Foods Co., LLC*, No. 3:23-CV-2630-D, 2024 WL 1251519, at *3 (N.D. Tex. Mar. 22, 2024). "This court has repeatedly held that, when ruling on a motion to dismiss, the court does not consider additional facts that are alleged in a response brief but not in the complaint." *Obinyan v. Prime Therapeutics LLC*, No. 3:18-CV-0933-D, 2019 WL 5647955, at *3 (N.D. Tex. Oct. 31, 2019) (citing *Wilson v. Deutsche Bank Tr. Co. Ams.*, 2019 WL 2578625, at *4 (N.D. Tex. June 24, 2019)); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint[.]").

Therefore, in making these findings, the undersigned reviews only those facts alleged in the amended complaint, the attached exhibits as referenced in the complaint, and the TWC Charge attached to the motion.

## C.    Factual allegations.

This civil action arises from Williams's employment at and termination from RISD.  (*See generally* Am. Compl.)   He asserts that throughout his employment, and leading to his termination, RISD discriminated against him due to his gender, national origin, race, age, and disability, and it retaliated against him based on protected conduct.  (*See id.*)

Williams is a 62-year-old African-American and Native-American man.  (Am. Compl. at ECF p. 3.)  His allegations of discrimination go back as far as 2020.[2] Williams's amended complaint addresses a series of events spanning multiple years, many of which are vague or conclusory.  Liberally construing his amended complaint, the undersigned summarizes the relevant facts.

Williams worked as a school bus driver for RISD.  (Am. Compl. at ECF p. 4.) According to Williams, he had additional duties and responsibilities, such as being a CDL instructor, school bus driver, and assistant to the safety supervisor.  (*Id.* at ECF pp. 4, 5.)  He asserts that RISD knew about his alleged disability since 2016 and points to one of his attached exhibits as evidence.  (*Id.* at ECF p. 4.)  The exhibit,

---

[2] Williams mentions one alleged discrimination incident in 2019.  (Am. Compl. at ECF p. 4.)  However, Williams had previously abandoned any claims from 2018 and 2019. (*See* Dkt. No. 16 at 9; *see also* FCR at 13.)

however, does not identify a disability or reflect anything about a disability. (*See id.* at ECF p. 58 (welcome email congratulating Williams about joining RISD and giving further instructions about forms and documents to bring to orientation).)

In August 2020, Williams applied for the internal position of "Driver Supervisor" and was a finalist for that position. (Am. Compl. at ECF p. 5.) Ultimately, the job was given to external applicant Jennifer Stevens, a white woman. (*Id.*) Williams alleges that multiple people—Thomas Crane, the Director of Human Resources; Dr. Terry Harris, a Human Resources ("HR") administrator; Larry Hudson, the Director of Transportation; and Eric Thompson, Safety Supervisor— informed him that "the position had to be given to a Caucasian female[.]" (*Id.* at ECF p. 5.) Williams also asserts that after finding this out, he complained to HR regarding racial and national origin discrimination. (*Id.*)

According to the amended complaint, a number of Williams's colleagues made derogatory comments to him regarding his Native American status around September 2020. (Am. Compl. at ECF p. 5.) The following month, on October 6, 2020, an intoxicated woman rear-ended a school bus driven by Williams. (*Id.* at ECF p. 6.) Williams alleges that the intoxicated woman and her son racially slandered him. (*Id.*) RISD subsequently recognized Williams and gave him a card featuring M&M cartoon characters and a package of M&M candy in appreciation for his adherence to protocol and professional handling of the incident. (*Id.* at ECF pp. 71-72) Williams avers that RISD's use of M&Ms exhibited racial animus. (*Id.* at

ECF p. 6.)  Finally, in December 2020, Williams alleges that he filed a safety report
to Crane, Hudson, and Thompson addressing bus overcrowding.  (*Id.*)

Williams alleges that he suffered a workplace injury on February 22, 2021.
(Am. Compl. at ECF p. 6.)  He filed a workers' compensation ("workers' comp")
claim following the injury.  (*Id.* at ECF p. 7.)  The following month, in March 2021,
Williams filed a public records request to obtain video footage during the time of his
workplace injury.  (*Id.*)  That same month, Williams alleges that Julie Whiteman, the
Director of Risk Management, made derogatory comments regarding his age, such
as "RISD should not be responsible for liability of injury just because you (Williams)
are getting old."  (*Id.*)  Williams also asserts that he complained to HR about this.
(*Id.* at ECF pp. 7-8.)

Williams contends throughout his amended complaint that RISD retaliated
against him numerous times.  In one instance, he asserts that RISD attempted to
manipulate his FMLA and sick leave hours in May 2021.  (Am. Compl. at ECF pp.
7-8.)  In another instance, he alleges that RISD retaliated against him by stating that
it terminated him on May 28, 2021.[3]  (*Id.* at ECF p. 8.)  He also asserts that RISD
retaliated in June 2021 by logging into his employer-provided email account and
deleting important emails and by interfering with a home purchase and loan
approval.  (*Id.*)  Williams also asserts that RISD retaliated against him through

---

[3] Notably, Williams's exact termination date is disputed.

medical providers—for example, he attributes a long wait time at a CareNow as RISD's responsibility.  (*See id.* at ECF p. 40.)

Williams avers that, by June 10, 2021, a physician declared him "fit for work with no restrictions" after a physical examination.  (Am. Compl. at ECF p. 9.) Williams states that is when he "made the accommodation request to RISD to allow him to return to his prior duties as an Instructor Trainer[.]"  (*Id.*)  Williams does not mention what the requested accommodation was, and he simply asserts he requested to return.  (*See id.*)

During the following month, Williams avers, his supervisors made comments relating to his age after his injury, such as "you are getting old man," "you are not getting any younger, after a while we all need to face getting old," and "perhaps old age is telling you, you just need to retire."  (Am. Compl. at ECF p. 10.)  That summer, Williams also applied to the positions of Safety Supervisor, Assistant Safety Supervisor, and Driver Supervisor, which became available in July and August 2021. (*Id.* at ECF p. 10.)  Williams did not receive any of the positions he applied for.  (*Id.*)

By January 2022, Williams filed for unemployment compensation with the Texas Workforce Commission.  (Am. Compl. at ECF p. 14.)  Soon after, Williams filed a discrimination complaint with the Texas Workforce Commission Civil Rights Division ("TWCCRD").  (*See* Def. App.; *see also* Am. Compl. at ECF p. 21.)  The actual date of filing the charge is somewhat uncertain—Williams alleged to have filed it on January 14, 2022, (Am. Compl. at ECF p. 21), but an email from the

TWCCRD states that Williams first filed a complaint on January 21, 2022, (*id.* at ECF p. 50), and the TWC Charge lists a date of June 24, 2022, (Def. App. at 1).

Williams alleges that RISD's retaliation continued until recently. For example, he avers that RISD is colluding with medical centers to interfere with his treatment. (Am. Compl. at ECF p. 18.) Williams also alleges that RISD has been intentionally providing a long-term disability insurer with incorrect information. (*Id.* at ECF p. 20.)

Williams received his EEOC right-to-sue letter on May 3, 2024, and his TCHRA right-to-sue letter on February 29, 2024. (*Id.* at ECF p. 2.)

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F. Supp. 2d 615, 618 (N.D. Tex. 2012) (first alteration added) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To state a claim upon which relief can be granted and defeat a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins*, 224 F.3d at 498. The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only

determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

A pro se plaintiff's pleadings are liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). It is well established that a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotations omitted). "Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)). And "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

A plaintiff may not amend his allegations through a response to a motion to dismiss, Fed. R. Civ. P. 8(a); leave to amend must be granted freely "when justice so requires," Fed. R. Civ. P. 15(a)(2). One reason to deny leave is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

### III. ANALYSIS

Construing Williams's amended complaint liberally, per his pro se status, he asserts the following claims: (1) disability discrimination, including failure to

accommodate, under the Americans with Disabilities Act ("ADA") and the Texas

Commission on Human Rights ("TCHRA"), (2) discrimination based on a protected

status under Title VII and the TCHRA, (3) age discrimination under the Age

Discrimination in Employment Act ("ADEA"), (4) retaliation for protected activities

under Title VII, the ADEA, and Texas law, (5) discrimination under 42 U.S.C.

§ 1981, (6) breach of contract under Texas law, and (7) fraud under Texas law. (*See*

*generally* Am. Compl.) RISD moves to dismiss all Williams's claims.

## A.    Williams fails to plausibly allege a disability discrimination claim under the ADA and under the TCHRA.

Williams alleges that, beginning in July 2021, RISD began discriminating

against him because of a disability. (Am. Compl. at ECF p. 32.) He contends that

RISD refused to promote him, failed to accommodate him, and ultimately dismissed

him due to the alleged disability. (*Id.* at ECF p. 31-32.) Williams's disability

discrimination claims are conclusory and contradictory.

The ADA prohibits employment discrimination against a qualified individual

based on the individual's disability.[4] 42 U.S.C. § 12112(a); *EEOC v. LHC Grp., Inc.*,

773 F.3d 688, 694 (5th Cir. 2014). The ADA defines "disability" as "(A) a physical

or mental impairment that substantially limits one or more major life activities of

such individuals; (B) a record of such an impairment; or (C) being regarded as having

---

[4] "Because TCHRA parallels the language of the ADA, Texas courts follow ADA law in evaluating TCHRA discrimination claims." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 444-45 (5th Cir. 2018) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–87 (5th Cir. 2004)) (internal quotations and brackets omitted). Therefore, the analysis of Williams's claims ADA claims apply to his TCHRA disability claims as well.

such an impairment." 42 U.S.C. § 12102(1). The term "disability" is construed broadly to ensure coverage in accordance with the statute. 42 U.S.C. § 12102(4)(A). To "be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

To make a prima facie showing of disability discrimination, a plaintiff must allege that: "(1) [he] has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *LHC Grp., Inc.*, 773 F.3d at 697). Adverse employment decisions are 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, . . . compensating,' or demoting." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021). "To prevail on a failure-to-accommodate claim, a plaintiff 'must show that (1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations.'"

-13-

*Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 485 (5th Cir. 2023), *as revised* (Aug. 4, 2023) (citation omitted).

As he did in his original complaint, Williams argues that he is disabled because he meets the disability definition used by the Social Security Administration ("SSA"). (Am. Compl. at ECF p. 29.) The Court previously rejected this basis for claiming a disability, because the SSA's disability determination differs from the ADA's standards. (FCR at 21.)

Williams's remaining allegations do not plausibly allege a disability. He asserts he has had at least one disability since 2009, but it "was accelerated to severe" by the February 2021 injury. (Am. Compl. at ECF p. 30.) Because Williams appears to allege that he was disabled both before and after the injury—but that he was more so after the injury—the undersigned assesses Williams's allegations to determine whether he alleges that he was disabled during either period.

Prior to his injury, Williams asserts that he "possessed a mental impairment affecting the major life activity of sleep since 2009[,]" (Am. Compl. at ECF p. 30), and a "musculoskeletal disorder, nervous system disorder, and a circulatory disorder which [a]ffect the major life activities of sitting, walking, and standing," (*id.*). But he also alleges that "[he] was asymptomatic to the effects of this disabilities[.]" (*Id.*) Williams provides no further details because—as he asserts in his response without support—"a plaintiff generally does not need to disclose specifics of the disability in

detail unless absolutely necessary to support the claim[.]"[5] (Resp. at ECF p. 14.) "Merely stating that his condition substantially limits various life activities is conclusory. [Williams] fails to allege any facts about the actual or expected duration and impact of the impairment." *Stewart v. AutoRevo, Ltd.*, No. 3:17-CV-0019-B, 2017 WL 5177119, at *3 (N.D. Tex. Nov. 8, 2017) (holding that plaintiff's statements that "[he] began suffering from a painful back/neck condition that substantially limited his sleeping, sitting, lifting, and bending[]" was insufficient to establish disability and granting motion to dismiss).

Likewise, Williams fails to plausibly allege a record of such disability or that he was regarded as disabled. He conclusorily states that RISD knew about the alleged mental impairment since 2018 but does not allege facts establishing RISD's knowledge of the disability. Accordingly, the undersigned finds that Williams fails to plausibly allege he was a qualified individual with a disability prior to his workplace injury.

The undersigned next turns to whether Williams qualifies as disabled after his workplace injury. According to Williams, his alleged disability "was accelerated to severe as a result caused by his work related injury[.]" (Am. Compl. at ECF p. 30.) Yet he simultaneously alleges that he passed a "medical exam that cleared him with the ability to drive on June 10, 2021." (*Id.* at ECF p. 31.) He also contends that the

---

[5] In his response, Williams does allege that his mental impairment is related to post-traumatic stress disorder ("PTSD"). (Resp. at ECF p. 4.) But this fact is not in his amended complaint and thus, as explained above, is not properly before the Court.

physician declared him "fit for work with no restrictions[.]"  (*Id.* at ECF p. 9.)

Williams does not provide additional details as to how his injury affected his work-

related abilities.  (*see id.* at ECF pp. 32-33.)  Instead, he simply avers he was denied

promotions because of his disability.  (*Id.* at ECF p. 33.)  Even considering the

leeway afforded pro se plaintiffs, Williams has failed to plead facts creating a

plausible inference that he is disabled under the ADA.  Therefore, he has failed to

plead the first element of a disability discrimination prima facie case and the first

element of a failure to accommodate claim.  The Court should dismiss his disability

claims under the ADA and the TCHRA.

**B.    Williams's claims of disparate treatment under Title VII and the TCHRA should be dismissed as time-barred.**

Williams realleges his race, gender, and national origin disparate treatment

discrimination claims.  In assessing RISD's motion to dismiss the original complaint,

the undersigned recommended denying the motion to dismiss based on Williams's

allegations that he was not promoted because RISD required that the position be

awarded to a white female.  (FCR at 18-19.)  The undersigned noted, however, that

Williams's original complaint lacked factual allegations concerning essential details

and dates.  (*See* FCR at 2 ("Williams's pro se complaint addresses a series of events

spanning multiple years, and Williams does not clearly allege dates for certain

events.").)  In recommending that Williams be permitted to file an amended

complaint, the undersigned explained that any amended complaint "should be clear

and precise, which includes asserting dates for relevant events."  (*Id.* at 29.)  Having

provided temporal clarity to his allegations of discriminatory treatment, it is apparent that his claims are time-barred.

Williams avers that RISD discriminated against him: (1) in August 2020, when he applied for the position of Driver Supervisor and did not receive it, (Am. Compl. at ECF p. 5); (2) in September 2020, when Williams was subjected to derogatory comments regarding his Native American status, (*id.* at ECF p. 5-6); and (3) in October 2020, when he received a card depicting M&M characters from RISD expressing appreciation for handling a difficult situation created by maltreatment by an intoxicated driver who hit the bus he was driving, (*id.* at ECF p. 72).  Williams makes no mention of these events in his TWC Charge.  (Def. App. at 1.)

Before an individual may pursue a Title VII claim in federal court, he must timely exhaust administrative remedies.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).  Exhausting remedies is also a requirement before filing under the ADEA, ADA, or the TCHRA.  *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 207 (5th Cir. 2015) (unpublished) ("Under Title VII, the ADEA, and the ADA, a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court."); *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) ("Under [TCHRA], a Texas plaintiff must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission or the Texas Workforce Commission.").  A plaintiff exhausts administrative remedies by filing a charge with the EEOC or the TWC within the required deadlines.

-17-

In Texas, which provides a state administrative mechanism to address claims of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged. *See* 42 U.S.C. § 2000e-5(e)(1); *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994). And a complaint under the TCHRA "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code Ann. § 21.202(a). Under the Worksharing Agreement between the EEOC and the TWC, a complaint filed with the EEOC, and forwarded by the EEOC to the TWC, satisfies the requirements of the TCHRA. *See Vielma v. Eureka Co.*, 218 F.3d 458, 461 (5th Cir. 2000).

Williams alleges that he filed his TWC Charge on January 14, 2022. (Am. Compl. at ECF p. 21.) The actual charge, however, is dated June 24, 2022, and notes that the earliest discrimination took place on February 1, 2021. (Def. App. at 1.) Using Williams's earliest possible date, 180 days before January 14, 2022, is July 18, 2021; and 300 days before January 14, 2022, is March 20, 2021. Any events occurring prior to those dates are time-barred and cannot support a claim of discrimination. Here, each event Williams references in relation to the alleged gender, race, and national-origin discrimination occurred in 2020, prior to both deadlines. Therefore, Williams's gender, national origin, and race disparate treatment claims are time-barred, and the Court should dismiss them.

**C.**     **Williams fails to plausibly allege a claim under the ADEA.**

Williams alleges that RISD discriminated against him because of his age when it fired him.  (Am. Compl. at ECF p. 35.)  Williams supports his claim by describing occasions when RISD employees made comments about his age.  Specifically, Williams alleges that Whiteman made derogatory comments about his age in March 2021 after his injury, saying "RISD should not be responsible for liability of injury just because you (Williams) are getting old."  (*Id.* at ECF p. 7.)  Williams also avers that in July 2021, Crane, Hudson, and Thompson also commented on Williams's age when they said "you are getting old man[,]" "you are not getting any younger, after awhile we all need to face getting old[,]" and "perhaps old age is telling you, you need to retire[.]"  (*Id.* at ECF p. 10.)  He contends that he "was replaced by someone younger," but adds little detail to his allegations, stating that "[o]nly discovery would reveal the names and exact ages."  (*Id.* at ECF p. 35.)

To establish a prima facie case of age discrimination under the ADEA in connection with the termination of his employment, Williams must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Goudeau v. Nat'l Oilwell Varco, LP*, 793 F.3d 470, 474 (5th Cir. 2015).  The U.S. Supreme Court and the Fifth Circuit have not specified a distinct pleading threshold for ADEA claims. *Haskett v. T.S. Dudley Land Co., Inc.*, 648 F. App'x. 492, 495 (5th Cir. 2016).  "Thus, the typical Rule 12(b)(6) standard

applies: a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)) (internal quotations omitted).

"[I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be 1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000) (internal quotations omitted).

Here, Williams fails to plausibly allege that the remarks are related to his termination for several reasons.  First, Williams fails to allege facts in his amended complaint showing that those who made the remarks—Whiteman, Hudson, Crane, and Thompson—had "authority over the employment decision at issue." *McIntyre v. Tyson Fresh Meats, Inc.*, No. 2:20-CV-237-Z, 2021 WL 489224, at *2 (N.D. Tex. Feb. 10, 2021) (dismissing ADEA claim in part because plaintiff failed to allege that person who stated plaintiff was getting older had authority over her employment decision or made ultimate termination decision).  Apart from these remarks, Williams does not allege additional facts supporting the contention that his age was a factor in his termination.  Accordingly, Williams fails to plausibly allege an age discrimination claim.

As an independent reason to dismiss, Williams has failed to plausibly allege he was replaced by someone substantially younger than him.  Williams asserts in conclusory fashion that he was replaced by someone younger.  (Am. Compl. at ECF pp. 35-36.)   The Supreme Court has said "an inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger."  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).  Instead, the replacement must be "substantially younger than the plaintiff" to support an inference of age discrimination.  *See id.*  Here, Williams does not provide any age—or approximate age—of the person who allegedly replaced him.  Therefore, Williams has failed to plausibly allege a claim of age discrimination in this regard too.  *Cf. Keplar v. Google, LLC*, No. 3:22-CV-2281-B, 2023 WL 7360891, at *6-7 (N.D. Tex. Nov. 7, 2023) (finding that plaintiff met the burden by pleading that his replacement was 17 years younger).

Based on the above, the undersigned finds that Williams has not met Rule 8 standards on his age discrimination claim, and the Court should dismiss his claim.

**D.    The motion to dismiss should be granted with respect to Williams's retaliation claims.**

Many of Williams's allegations begin by stating that RISD's actions were retaliatory.  (*See e.g.*, Am. Compl. at ECF p. 7 ("Retaliation by Defendant occurs when[,]"), 8 ("In further retaliation[,]"), 11 ("On or about August 4, 2021[,] RISD is retaliating against Williams."), 12 ("Acts of racial and retaliation have been exercised[,]").)  In order for Williams to have a valid retaliation claim, though, he

must first plausibly allege that he engaged in a protected activity. *Mitchell v. U T L X Mfg., L.L.C.*, 569 F. App'x. 228, 230 (5th Cir. 2014) ("[T]o establish a prima facie case of retaliation, [Plaintiff] must prove . . . [that] he engaged in a protected activity[.]").

Liberally construing his amended complaint, Williams's alleges that he engaged in protected activities when he: (1) complained to human resources about not receiving the driver supervisor position over Jennifer Stevens in August 2020; (2) submitted a safety report addressing the overcrowding of his bus in December 2020; (3) requested the video from events underlying his injury in March 2021; (4) complained to human resources about Whiteman's derogatory remarks about his injury and age on May 20, 2021; (5) reported in June 2021 that Whiteman retaliated against him due to his workers' comp claim; and (6) filed a workers' comp claim.

### 1. Williams's amended complaint fails to plausibly assert a retaliation claim under Title VII and the ADEA.

The Court concluded upon review of the original complaint that Williams's following activities are not protected activities under Title VII: (1) submitting an internal safety report; (2) submitting a request for video evidence; (3) filing a workers' comp claim; and (4) complaining about retaliation based on a workers' comp claim. (FCR at 24-26.) The undersigned only addresses the two additional activities in the amended complaint that Williams contends are protected activities: complaining to human resources about Jennifer Steven's promotion in August 2020 and the May 20,

-22-

2021, complaint about Whiteman's derogatory remarks about his age. These two alleged instances of retaliation should be dismissed for failure to exhaust remedies.

Generally speaking, "[t]o bring a suit under Title VII . . . or the ADEA (age), a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378-79 (5th Cir. 2019) (citing *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 77 (5th Cir. 1982) (Title VII); *Foster v. Nat'l Bank of Bossier City*, 857 F.2d 1058, 1060 (5th Cir. 1988) (ADEA))). To determine "whether a plaintiff has exhausted a particular claim, [the Fifth Circuit has] noted that 'the scope of an EEOC complaint should be construed liberally.'" *Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). But this construction must be weighed against Title VII's goal of "trigger[ing] the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89. So, to attain a balance between the two, courts in this circuit interpret

> what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. . . . [Courts should] engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.

*Patton*, 874 F.3d at 443 (internal cites and quotations omitted).

-23-

**a.    Williams did not exhaust his administrative remedies for his retaliation claim based on a human resources complaint about Jennifer Stevens's 2020 hiring.**

Williams's did not allege in his TWC Charge that RISD retaliated against him due to his complaint to human resources about Jennifer Stevens receiving a position that he applied for.  The charge makes no mention of the August 2020 promotion.  (*See* Def. App at 1.)  It also does not mention any internal human resources complaint of discrimination in relation to that job.  As noted above, the charge only makes references to events beginning in 2021.  (*See id.*)  An EEOC investigator would have no reason to investigate events that occurred six months before the period when Williams alleges that discrimination and retaliation began.  Because Williams's complaint to HR about the promotion was not addressed in the TWC Charge, that claim has not been administratively exhausted and should be dismissed.

**b.    Williams did not exhaust his administrative remedies for his retaliation claim based on the internal complaint regarding Julie Whiteman's remarks.**

Nor did Williams mention in the TWC Charge a complaint about Whiteman's remarks about his age.  (*See* Def.'s App. at 1.)  While a Court may look at the substance and past the four-corners of the charge, *Pacheco*, 448 F.3d at 789, "[t]o determine whether a claim is within the scope of the reasonable EEOC investigation, the Court must look to the factual statements in the EEOC charge."  *Cutrer v. Tarrant Cnty. Workforce Dev. Bd.*, No. 4:18-CV-00159-O, 2020 WL 5878458, at *6 (N.D. Tex. Oct. 2, 2020) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("the crucial element of a charge of discrimination is the factual statement contained

-24-

[in the EEOC charge].")).  "The allegations contained within the EEOC Charge do not have to exhaustively list every factual detail or possible claim that Plaintiff may bring against Defendant; they only have to be sufficient to put an investigator on notice of [his] claims." *Shelton v. Parkland Health*, No. 3:24-CV-2190-L-BW, 2025 WL 1513441, at *10 (N.D. Tex. May 28, 2025) (citing *Manning v. Chevron Chem. Co., L.L.C.*, 332 F.3d 874, 879 (5th Cir. 2003)).

Although failing to check a box on the EEOC charge is not fatal to a retaliation claim, "[d]iscrimination and retaliation claims are distinct," and a court may find that a plaintiff did not exhaust administrative remedies when "the factual statement in [the plaintiff's] EEOC charge did not put [the defendant] on notice that [the plaintiff] was asserting a retaliation claim." *Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 374 (5th Cir. 2013).  Similarly, merely checking the box for retaliation on the EEOC charge is not sufficient if the plaintiff fails to allege any facts concerning retaliation that would have put the EEOC on notice about the possibility of a retaliation claim.  *See Givs v. City of Eunice*, 512 F. Supp. 2d 522, 536–37 (W.D. La. 2007) (citing *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998)).

Another court in this district found that a plaintiff failed to exhaust administrative remedies for disability discrimination because she "summarily state[d] that she believed that she was discriminated against based on disability in violation of the ADA," without providing facts supporting a claim of disability discrimination in either her EEOC charge or her complaint with the court.  *Jones v. City of Dallas*, No. 3:22-cv-1477-L, 2024 WL 3207030, at *6 (N.D. Tex. June 6, 2024), *adopted*,

2024 WL 3718064 (N.D. Tex. Aug. 7, 2024). In contrast, the Fifth Circuit found that the plaintiff properly exhausted her administrative remedies for retaliation claims when the plaintiff alleged that she was denied reasonable accommodations and then was terminated five days later by her employer. *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018). There, the court found that the plaintiff exhausted her administrative remedies despite not checking the retaliation box or even mentioning "retaliation" in her charge because she described the general nature of her retaliation claim. *Id.* at 445-46.

Williams's charge does not contain factual allegations regarding remarks about age by anyone, let alone by Whiteman, nor did Williams allege that he made any report to human resources about such statements. Instead, Williams's factual allegations in the charge center around his post-injury work issues. As noted above, Williams does mention in his charge that he was retaliated against for "exercising his protected rights." (*Id.*) But nothing in his factual statement reasonably implies that it was due to remarks about his age and an internal complaint about it; instead, it all seems to stem from his injury. (*See id.*)

Because Williams's ADEA retaliation claim is outside the scope of the TWC Charge, he failed to exhaust his administrative remedies with respect to that claim. *See Pacheco*, 448 F.3d at 792 (affirming a disparate-impact claim dismissal because an investigation into it could not reasonably be expected to grow out of the plaintiff's charge). "[C]ourts must dismiss any claims where plaintiffs fail to show administrative exhaustion." *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652,

671 (N.D. Tex. 2023), *reconsideration denied*, 347 F.R.D. 155 (N.D. Tex. 2024).  The

Court should dismiss Williams's Title VII and ADEA retaliation claims.  *See*

*Mitchell*, 569 F. App'x. at 231 (holding that "the district court correctly dismissed

[Plaintiff's] claim for retaliation because he failed to assert facts showing he was

engaged in [a] protected activity").

### 2. The Court has dismissed Williams's retaliation claim under Chapter 451 of the Texas Labor Code, and there is no reason to reconsider its decision.

The undersigned recommended dismissal of Williams's retaliation claim

under Chapter 451 of the Texas Labor Code because it is time-barred.  (FCR at 26-

28.)  Williams filed an objection stating that his claim was timely because RISD's

actions in 2021 were unclear, and he did not know about his termination until some

point in 2022.  (*See* Dkt. No. 21 at ECF pp. 3-5.)  The District Judge reviewed *de novo*

the portions of the FCR to which objection was made and found no error.  (Dkt. No.

25.)

In the amended complaint, Williams reiterates the same argument he made in

objection to the prior FCR.  (*See* Am. Compl. at ECF p. 38.)  He continues to argue

that RISD has been inconsistent regarding his termination date.  (*Id.* at ECF p. 38.)

He argues that May, June, and August 2021 are all the wrong termination dates, and

that he was employed at least through September or October 2021.  (*See id.* at ECF

pp. 38-39.)  This is immaterial.  In the analysis, the undersigned did not use any of

these dates; instead, it considered January 2022—when Williams filed for

unemployment benefits—as the accrual point.  *Thurman v. Sears, Roebuck & Co.*, 952

F.2d 128, 134 (5th Cir. 1992) (finding that the accrual date "commence[s] when the employee receives unequivocal notice of his termination or when a reasonable person would know of the termination").

In addition to re-arguing that he did not know RISD terminated him, Williams also asserts that his claim is timely because "there exist[s] evidence from the TWCCRD that specifies the two year [s]tatute of [l]imitations date begins on 6/29/2022." (Am. Compl. at ECF pp. 38, 53.)  Williams attached an email from the TWCCRD to the amended complaint that informs him that his charge was formalized on or about June 29, 2022, and the Texas two-year statute of limitations began on that date. (*Id.* at ECF p. 53.)  Williams misinterprets this as asserting that all his Texas claims began accruing on that date, but that is not the case.

"[T]he TCHRA requires a plaintiff to file suit within two years after a plaintiff files a charge of discrimination[.]" *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) (citing Tex. Lab. Code. § 21.256).  Williams's workers' comp retaliation claim is not under the TCHRA; instead, it is pursuant to Texas Labor Code Chapter 451. (*See* FCR at 26-27.)  Unlike the TCHRA, Chapter 451 does not have an exhaustion of remedies provision. *Larsen v. Santa Fe Indep. Sch. Dist.*, 296 S.W.3d 118, 127 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (concluding "chapter 451 does not impose a freestanding exhaustion requirement"); *see also Mancera v. City of Laredo*, No. 04-04-00301-CV, 2005 WL 542793, at *4 (Tex. App.—San Antonio Mar. 9, 2005, pet. denied) ("Chapter 451 [does not] include a requirement that an individual go through an administrative process prior to filing a

retaliatory discharge claim.").   The TWCCRD email references Williams's charge
perfection date as the accrual date for his Texas Chapter 21 claims, (*see* Am. Compl.
at ECF p. 53), and ultimately, has no bearing on the statute of limitations on a claim
filed under a different statute.  Accordingly, Williams's Chapter 451 claim is time-
barred.

 Given Williams's pro se status, the undersigned considers whether equitable
estoppel or equitable tolling should apply to his case.  Equitable estoppel generally
applies when the defendant's misconduct prevents the plaintiff from asserting his
rights within the limitations period.  *Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1280 (5th
Cir. 1986).  Nothing that Williams alleges suggests that RISD obstructed him from
timely filing his Chapter 451 retaliation claim.

 The Fifth Circuit has recognized three possible bases for equitable tolling:
"(1) the pendency of a suit between the same parties in the wrong forum; (2)
plaintiff's unawareness of the facts giving rise to the claim because of the defendant's
intentional concealment of them; and (3) the EEOC's misleading the plaintiff about
the nature of her rights."  *Wilson v. Sec'y, Dep't of Veterans Affairs*, 65 F.3d 402, 404
(5th Cir. 1995) (citation omitted).  Here, Williams has not identified any suit pending
between the same parties that was pending in the wrong forum.  Williams does assert
that he filed consistent with the information from the TWCCRD, however, the
information is not misleading.  Williams's THCRA claims related to the formalized
TWC Charge do have a two-year statute of limitations.  Finally, while Williams
contends that RISD "has alleged various termination dates" as noted above,

Plaintiff's claim is untimely even under the latest possible termination date—the day he filed for unemployment benefits.  Accordingly, the undersigned finds that Williams's allegations do not support applying equitable tolling.

Because the Court has already addressed and disposed of this claim, and the new evidence does not support reconsideration, the undersigned finds no reason the Court should reconsider this argument.

**E.     Williams does not allege a discrimination claim under 42 U.S.C. § 1981.**

RISD argues that Williams cannot maintain a § 1981 claim against it because "[c]laims against governmental entities under section 1981 are subject to dismissal." (Mot. at 18.)

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).  Section 1981 further states that the "rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

Section 1981 "serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race." *Jenkins v. City of Dallas*, No. 3:22-CV-0960-B, 2022 WL 6225559, at *3 (N.D. Tex. Oct. 6, 2022).  It "provides a cause of action to remedy racial discrimination by private employers in private employment contracts." *See Lovelace v. Coppell Indep. Sch. Dist.*, No. 3:10-CV-

1015-B(BK), 2010 WL 3943515, at *2 (N.D. Tex. Sept. 20, 2010), *adopted*, 2010 WL

3943442 (N.D. Tex. Oct. 6. 2010).  In 1989, the United States Supreme Court found

that § 1981 does not provide a separate cause of action against local government

entities.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989); *see also Sayibu v.*

*Univ. of Tex. Sw. Med. Ctr. at Dallas*, No. 3:09-CV-1244-B, 2010 WL 4780732, at *2

(N.D. Tex. Nov. 22, 2010) ("It is settled law in the 5th Circuit that an individual

cause of action under § 1981 cannot be brought against a governmental entity like

Parkland.")

Williams argues that RISD waived its governmental

immunity for a variety of reasons and can therefore be liable under § 1981.  (Resp. at

ECF pp. 20-22.)  Williams's argument, however, concerns governmental immunity

and does not address the inability to sue a governmental employer under § 1981.

"Because [RISD] is [not] a private employer, [Williams] wholly fails to assert a cause

of action for civil rights violations under section 1981[.]"  *See Lovelace*, 2010 WL

3943515, at *2.

**F.    Williams fails to allege a plausible claim for breach of contract.**

Williams contends that RISD began to breach a contract on or about March

2021 and that its breaches continued until January 2025.  (Am. Compl. at ECF p.

39.)  Williams alleges that, pursuant to a contractual obligation, "[RISD] was to

provide access to professional, fair, in network medical care opportunity to any

employee who was injured during the scope of their employment [and] [t]o provide

access to medical care treatment with the intent of returning a[n] injured employee

-31-

back to work." (*Id.* at ECF pp. 39-40.)  He complains of long wait times, incorrect descriptions, and generally negative experiences with medical providers, seemingly implying these were RISD's responsibility. (*See id.* at ECF pp. 40-43.)

RISD argues that Williams's breach of contract claim fails "because these vague allegations do not show the existence or breach of a valid contract with [RISD] that waives the District's immunity from such claims under Chapter 271." (Mot. at 21.)  Williams counters that RISD is wrong because his claims are pursuant to Texas Education Code Chapter 21 and not Texas Local Government Code Chapter 271. (Resp. at ECF p. 23.)  The parties disagree as to what the appropriate applicable statutory provisions are.

Williams mentions the Texas Education Code Chapter 21 for the first time in his response to the motion. (Resp. at ECF p. 23.)  Therefore, any additional claims under Texas Education Code Chapter 21 are not properly before the Court. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").  Regardless, even if the claim was properly before the Court, it would fail.  Williams simply points to Chapter 21 without any further detail, and it is unclear what contract he refers to. While Chapter 21 does deal with public education, educators, district employees, and volunteers, Williams does not point to any specific provision of a contract that he alleges RISD violated.  This chapter is composed of many subchapters and subsections, varying from topics related to teacher employment contracts to required

-32-

certifications.  *See* Tex. Educ. Code § 21.  Williams fails to provide any additional details or guidance to what specific provision he is referring to, and the undersigned declines to sift through the statute to find what might be an applicable provision. *Osahar v. U.S. Postal Serv.*, 297 F. App'x. 863, 864 (11th Cir. 2008) ("Despite the leniency afforded pro se plaintiffs, the district court does not have license to rewrite a deficient pleading.").

Williams fails to plausibly allege a breach of contract claim.  The elements of a breach of contract claim under Texas law are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotations omitted).  Williams fails to allege any contract between him and RISD, nor does he state the terms of the contract or identify any provision that RISD allegedly breached.  As a result, the Court should dismiss Williams's breach of contract claim.

## G.    RISD is immune from Williams's claim for fraud.

RISD argues that it is immune from suit under the Texas Tort Claims Act ("TTCA").  (Mot. at 24-25.)  Texas and its political subdivisions enjoy full immunity from tort claims, except to the extent the immunity is waived by the TTCA.  *Leeds v. Tex. Dep't of Family & Protective Services*, No. 3:14-CV-3578-N-BK, 2015 WL 4736567, at *3 (N.D. Tex. Aug. 10, 2015) (citing *Brown v. City of Houston*, 8 S.W.3d 331, 333–34 (Tex. App.—Waco 1999)).  "The TTCA only waives a governmental entity's

immunity for torts that involve property damage, personal injury, or death arising out of the use of a motor vehicle or tangible personal or real property." *Id.*; Tex. Civ. Prac. & Rem. Code § 101.021. Moreover, § 101.057(2) expressly states that the waiver does not apply to intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057.

Fraud is an intentional tort under Texas law. *See LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 209 (Tex. App.—Dallas 2012, no pet.) (noting "[f]raud is an 'intentional tort' for which the TTCA provides no waiver of immunity"). Accordingly, RISD is immune from Williams's fraud claim under the TTCA, and the Court should dismiss the claim.

## H.    The Court should not grant Williams leave to file another amended complaint.

Williams recently filed an opposed motion for leave to file a second amended complaint. (Dkt. No. 39.) Citing amendment standards in Fed. R. Civ. P. 15(a)(2), he avers that he has "new discovered facts" but does not specify them. (Dkt. No. 39 at ECF p. 1.) He merely states that he would "clarify roles and involvement of decision makers, clarify disability and ADA claims, clarify Title VII retaliation claims and [allegations] by Defendant that claims were not exhausted, clarify regarding Section 1981 claims . . . , further clarify basis for reconsidering Chapter 451 . . . , and demonstrate District has no immunity from breach of contract and fraud claims." (*Id.* at ECF p. 2.)

"Ordinarily, a plaintiff should be afforded an opportunity to amend [his] complaint in response to a recommended dismissal or when the action is to be

dismissed pursuant to a court order." *Beam v. Caliber Home Loans, Inc.*, No. 3:19-CV-01201-M-BT, 2021 WL 4445350, at *4 (N.D. Tex. Sept. 7, 2021), *adopted*, 2021 WL 4439179 (N.D. Tex. Sept. 28, 2021). While "a court should freely give [a party] leave" to amend his pleadings "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), a court has discretion not to allow amendment when an amendment would be futile, *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999). A district court has discretion whether to grant or deny a motion to amend, and it may consider several things in exercising that discretion, including whether the plaintiff has failed to cure deficiencies through prior amendments, any prejudice to the opposing party, or the futility of further amendment. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 391 (5th Cir. 2017) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (brackets omitted)).

An amendment would be futile if the plaintiff has already pleaded his best case. *See Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011). "A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint." *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x. 625, 627 (5th Cir. 2017) (internal quotation marks omitted). Similarly, a district court need not grant a futile motion to amend. *Id.* "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.* (internal citations omitted).

Williams has pleaded his best case. *See Beam v. Caliber Home Loans, Inc.*, No. 3:19-CV-01201-M-BT, 2020 WL 5868567, at *4 (N.D. Tex. Aug. 27, 2020) (dismissing plaintiff's amended complaint after determining plaintiff pleaded her best case), *adopted as modified*, 2020 WL 5848973 (N.D. Tex. Oct. 1, 2020). The Court has previously explained the applicable pleading standards and the insufficiencies of his factual allegations. In granting Williams prior leave to amend, the undersigned specifically explained that "[t]o survive another motion to dismiss, the amended complaint should be clear and precise, which includes asserting dates for relevant events." (FCR at 29.)

Williams filed this amended complaint in response to a prior motion to dismiss pursuant to Rule 12(b)(6). As detailed above, Williams's amended complaint fails to meet Rule 8 standards. Despite the amended complaint being considerably longer than the original complaint, many of Williams's allegations remain vague and, in multiple instances, conclusory. (*See* Resp. at ECF p. 15 ("Williams stating that he is disabled is not a conclusory allegation; it is a fact.").)

Williams has had an opportunity to plead his best case in response to motions to dismiss. *See also Thompson v. City of Weatherford*, No. 4:23-CV-201-O-BP, 2023 WL 4239756, at *4 (N.D. Tex. June 13, 2023) ("[Plaintiff] has pleaded [her] best case after filing an Original and Amended Complaint and responding to the Court's Questionnaire."), *adopted*, 2023 WL 4240158 (N.D. Tex. June 28, 2023), *aff'd sub nom. Thompson v. City of Weatherford Municipality*, No. 23-10767, 2023 WL 8368867 (5th Cir. Dec. 4, 2023). Williams does not identify any additional facts that he could

-36-

allege that might provide sufficient plausibility to his claims to survive dismissal. Allowing another amendment would be futile, needlessly delay this case, and prejudice Defendants by subjecting them to further litigation.

As an independent reason to deny Williams's motion to amend, he failed to comply with local rules. *See* N.D. Tex. L.R. 15.1. Williams did not "attach the proposed amended pleading to the motion as an exhibit" as required. *See id.*

Therefore, the Court should dismiss without further leave to amend. S*ee Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("[J]udges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.") (citations omitted).

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant RISD's 12(b)(6) motion (Dkt. No. 28), **DISMISS** Williams's claims with prejudice, and **DENY** Plaintiff Williams's motion for leave to file a second amended complaint, (Dkt. No. 39).

**SO RECOMMENDED** on August 12, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days of being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).